482 P.2d 452

**STATE of Arizona, Appellee,**
v.
**Larry D. HANNA, Appellant.**
**No. 1614–2.**

Supreme Court of Arizona,
In Division.
March 9, 1971.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

John V. Riggs, Tempe, for appellant.

STRUCKMEYER, Chief Justice.

Larry D. Hanna, defendant herein, was tried by jury, convicted, and sentenced to

life imprisonment for the crime of murder in the first degree. From the conviction and sentence he appealed in 1965. See State v. Hanna, 99 Ariz. 346, 409 P.2d 47. In that appeal, defendant's counsel informed this Court that he had searched the record and was unable to find grounds upon which an appeal could be based, and, accordingly, in compliance with our then existing procedures, the case was submitted on the record for examination for fundamental error. Our examination of the record revealed no reversible error and the conviction and sentence were affirmed.

Thereafter, on April 7, 1970, the appeal was ordered re-opened and counsel was appointed who submitted a brief on defendant's behalf. The question now presented is whether a confession and certain statements made by defendant prior to the trial should have been excluded from the evidence introduced at the trial, it being his position that his confession and admissions were not intelligently and voluntarily given.

While defendant was on parole from the Arizona State Prison, he forged some $800.00 in checks on his parents' checking account. On the morning of May 26, 1964, defendant, after an argument with his mother, tied her hands and feet with nylon stockings and then tied another stocking around her neck and forced a handkerchief down her throat. His mother died as the result of strangulation. Defendant was 23 years old at the time. He does not now claim, and has never claimed, that he did not strangle his mother. This he admitted at the trial when he took the stand in his own defense.

Defendant was arrested at a hotel in Portland, Oregon by agents of the Federal Bureau of Investigation and delivered to a Maricopa county deputy sheriff and a Phoenix police officer who flew him back to Phoenix where he was placed in the county jail. A summary of the pertinent evidence relative to his confession and statements follows:

Special Agent Dulinsky testified that he entered Hanna's hotel room in Portland, Oregon with two other agents and it was explained to Hanna that they were not going to question him but that anything he might say would be used against him, that he did not have to make any statement, and that he had a right to consult an attorney before he made any statement whatever. Later, at the Bureau's local office he was again advised of these rights. He was then asked if he wanted to tell anything. Hanna said that he would do so if he were permitted to be frank. He then told the story of the homicide.

Phoenix Police Officer John Fields testified that he flew to Portland with Deputy Sheriff Fred Brown, who piloted the plane. Fields told Hanna, when they picked him up, that he was entitled to counsel and that anything he said would be used against him. Hanna stated that the F.B.I. agents had already advised him of his rights. In the plane on the way to Phoenix, he again told the story of the homicide. In the sheriff's car, while being taken from the plane to the jail in Phoenix, he admitted the offense to a newspaper reporter.

Later, he was booked at the county jail and questioned in detail. Hanna stated he was willing to give a full statement, so Fields asked that a deputy county attorney come over and take his statement before a court reporter. Hanna wrote out a statement before the deputy county attorney appeared. The deputy county attorney advised him of his rights, and defendant stated that he knew them. It was not until after he had given the statement, and in the presence of the court reporter, that he said that he would like to have an attorney "at his preliminary hearing like he had before when he was * * * tried * * * on the check charge."

Michael Benchoff, Deputy County Attorney, testified that he saw the defendant in an interrogation room of the Phoenix Police Department. Officer Fields was also

there. Benchoff advised Hanna of his right to counsel, that he did not have to say anything until he consulted an attorney, that he had a right to a lawyer, and that whatever he said might be used against him. Thereafter, Hanna gave the statement to the court reporter.

The defendant, Larry D. Hanna, testified, "* * * in regards to the extradition, he [the F.B.I. agent] asked me if I was going to sign it * * * and I said that I might as well, because as far as hiring a lawyer * * * I don't know of any, and the money that I have with me would not be sufficient * * *." On the plane, Officer Fields said something concerning a lawyer and Hanna said, "* * * I don't know if I want one or not." Back in Phoenix, when Officer Fields advised him of his right to counsel, Hanna said, "With 59 cents I can't hire an attorney so I'll have to wait until one is appointed." After that he answered all of Fields' questions. While aboard the plane, Officer Fields advised him of his constitutional rights twice, once between Portland and Reno, and once between Reno and Phoenix.

The testimony of the three witnesses, just related, was given at a hearing out of the presence of the jury during the course of the trial. The court found that the statements of defendant were voluntarily and understandingly made; that they were made without coercion; and were made without promises of immunity or reward. At the close of the trial, the jury was instructed that it should disregard defendant's pre-trial confession and admissions unless it was convinced beyond a reasonable doubt that they were voluntarily and understandingly made.

It is apparent that the trial judge believed that the police observed the accused's constitutional rights. The record amply supports the judge's finding that the confession and admissions were intelligently and voluntarily made. It supports the view that the accused was advised of his right to remain silent and of his right to

have an attorney present before he said anything, and that he understood what he was told, but that, nevertheless, he confessed, understanding fully his constitutional rights.

Judgment of conviction affirmed.

UDALL and LOCKWOOD, JJ., concur.